UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAHID RIZKA,

      Plaintiff,                           Case No. 13-cv-14870
                                           Hon. Matthew F. Leitman

v.

STATE FARM FIRE AND
CASUALTY COMPANY,

      Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT (ECF #13)

### INTRODUCTION

Sometime prior to 2011, Defendant State Farm Fire and Casualty Company ("State Farm") issued a homeowners insurance policy to Plaintiff Nahid Rizka ("Ms. Rizka") for a home in Dearborn, Michigan. In August 2011, Ms. Rizka filed for bankruptcy. As part of her bankruptcy proceedings, Ms. Rizka swore under oath that (1) she did not own any real property and (2) that she owned only $1,800 in personal property. Approximately eleven months later, in July 2012, the Dearborn home in which Ms. Rizka lived suffered water damage, and she filed a homeowners insurance claim with State Farm. In the insurance claim, Ms. Rizka sought (1) $253,503.00 in damages to the home – which Ms. Rizka apparently

1

claimed that she then owned – and (2) $160,431.57 in damages to personal property.  State Farm denied the claim because, among other reasons, it believed that Ms. Rizka fraudulently exaggerated her loss.  Ms. Rizka thereafter filed this action in which she alleges that State Farm breached its contractual obligation to cover the claimed losses. (*See* First Am. Compl., ECF #10.)  State Farm has moved for summary judgment.  (*See* ECF #13.)  For the reasons stated below, the Court denies the motion without prejudice.

## FACTUAL BACKGROUND

### A.    Ms. Rizka and Her Family

Ms. Rizka is a resident of Dearborn, Michigan.  (Nahid Rizka Examination Under Oath ("EUO") Transcript Vol. 1, ECF #13-3 at 10, Pg. ID 149.)  She has four children, Kamal (the oldest at 19-years-old), Summer, Tarek, and Mike.  (*Id.* at 9, Pg. ID 148.)  The father of Ms. Rizka's children is Mike Rizka.  Although Mike Rizka and Ms. Rizka share the same last name, they are not, and were never, married.  (Mike Rizka Affidavit, ECF #15-3 at ¶5.)  Starting in 2002, Ms. Rizka and her children lived in a home at 435 Woodcrest in Dearborn (the "Woodcrest Home").  (Nahid Rizka EUO Vol. 1 at 9-12, Pg. ID 148-149.)

### B.    Ms. Rizka's Homeowners Insurance Policy

At some as-yet-unidentified time before 2011, State Farm issued a homeowners insurance policy to Ms. Rizka for the Woodcrest Home.  (*See* the

"Policy" at ECF #13-2.)[1]   The Policy covers, among other things, "personal property owned or used by an insured…" (*Id.* at 6, Pg. ID 116.)   The Policy's definition of "insured" includes Ms. Rizka, and, "if residents of [her] household[,] … [her] relatives…"   (*Id.* at 4, Pg. ID 114.)   The Policy also contains a "concealment or fraud" provision that voids the Policy "as to [Ms. Rizka] and any other insured, if [Ms. Rizka] or any other insured … has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss." (*Id.* at 23, Pg. ID 138.)

## C.     Ms. Rizka Declares Bankruptcy in 2011

On August 10, 2011, Ms. Rizka filed a Chapter 7 bankruptcy petition in which she "declare[d] under penalty of perjury that the information provided [was] true and correct." (*See* the "Petition," ECF #13-4 at 4, Pg. ID 197.)  In the Petition, Ms. Rizka asserted that she held no ownership interest in any real property.  (*Id.* at 7, Pg. ID 200.)  Ms. Rizka listed the Woodcrest Home as her street address, and she indicated that she rented the home on a "month-to-month" basis from her sister, Georgina Mercer ("Ms. Mercer").  (*Id.* at 19, Pg. ID 212.)

---

[1] While State Farm has attached portions of the Policy to its summary judgment motion (*see* ECF #13-2), the record currently before the Court does not contain a full version of the Policy's "Declarations."  In addition, the record does not contain the "Proof of Loss" or "Claim of Loss" document that Ms. Rizka submitted to State Farm as part of the claims process.

Ms. Rizka likewise swore in the Petition that she owned a very limited amount of personal property.   Ms. Rizka said that she had just $100 in "cash on hand," owned $1,500 in "household goods and furnishings," and owned $200 in clothing.  (*Id.* at 8, Pg. ID 201.)  Aside from this $1,800 in personal property, Ms. Rizka claimed to own no other assets.

On November 11, 2011, the Bankruptcy Court issued a "discharge under Section 727 of Title 11" of the Bankruptcy Code.  (*See* Discharge, ECF #13-5 at 3, Pg. ID 235.)   None of Ms. Rizka's creditors received any funds from her bankruptcy estate.  (*Id.*)

## D.    Ownership of the Woodcrest Home

The record regarding the ownership history of the Woodcrest Home is not yet fully developed and is not clear.  Ms. Rizka has testified that "the home was originally Mike Rizka's" and that "he bought the home for [Ms. Rizka and her children]."   (Nahid Rizka EUO Testimony Vol. 1 at 38-39, Pg. ID 156.) According to Ms. Rizka, in or around 2005, Mike Rizka "lost the house" to foreclosure, at which time Ms. Mercer "re-bought it for [Ms. Rizka and her children]."  (*Id.*)  Ms. Rizka appears to claim that at some unidentified time after she emerged from bankruptcy, Ms. Mercer executed a quitclaim deed for the Woodcrest Home, pursuant to which Ms. Rizka became the owner of the property. (*See* Ms. Rizka's Br., ECF #15 at 21, Pg. ID 294; *See also* Ms. Rizka Affidavit,

4

ECF #15-4, at ¶9.)   According to her Amended Complaint, Ms. Rizka was thus "the owner" of the Woodcrest Home "at all material times."  (First Am. Compl. at ¶8.)   Ms. Rizka, though, has testified both that the Woodcrest Home was quit-claimed to her and (in an apparent inconsistency) that the home has "never" been in her name.  (Nahid Rizka EUO Testimony Vol. 3 at 33-35, Pg. ID 191-192.)  The record currently before the Court does not contain any documents, such as deeds or recorded mortgages, to substantiate or confirm the ownership history of the Woodcrest Home.

### E.     Ms. Rizka's Insurance Claim to State Farm

On July 8, 2012, the Woodcrest Home suffered water damage.  Ms. Rizka thereafter submitted a claim to State Farm under the Policy.  Neither party has provided the Court with Ms. Rizka's claim (or proof of loss) form.  It appears that Ms. Rizka sought $253,503 in damages to her "dwelling" (i.e. the Woodcrest Home) and $160,447.05 in personal property damages.  (*See* State Farm Br., ECF #13 at 11, Pg. ID 96.)

As part of the claims process, Ms. Rizka submitted a "Personal Property Inventory" to State Farm.  The inventory lists each piece of personal property at the Woodcrest Home that the water allegedly damaged and/or destroyed.  (*See* Property Inventory at ECF #13-6.)  The inventory form does not identify the owner

of the listed property.  Instead, the form simply states that the property was located in the 'Rizka Residence." (*Id.*)

**F.     State Farm Investigates and Denies Ms. Rizka's Insurance Claim**

After Ms. Rizka filed her insurance claim, State Farm commenced an investigation.   As part of its review, State Farm conducted three separate "examinations under oath" ("EUO") of Ms. Rizka.   (*See* Nahid Rizka EUO Transcripts at ECF #13-3.)   State Farm also conducted EUOs of Ms. Rizka's son Kamal (*see* Kamal Rizka EUO Transcript at ECF #19-2), and Kamal's father, Mike Rizka.  (*See* Mike Rizka EUO Transcript at ECF #19-3.)  Counsel for Ms. Rizka attended all of the EUO sessions.   (*See* ECF #13-3, #19-2, and #19-3.) During the EUOs, State Farm asked numerous questions about Ms. Rizka's insurance claim, her alleged losses, and her bankruptcy proceedings.  (*See id.*)

On November 8, 2013, State Farm informed Ms. Rizka that it had "completed its investigation" and that it had decided to reject her claim. (Rejection Letter, ECF #13-7.)   State Farm concluded that Ms. Rizka "intentionally misrepresented and concealed material facts and circumstances relating to [her claimed] loss and [that she had] committed fraud relating to this loss which bars [her] claim and voids the policy effective July 8, 2012." (*Id.*)   State Farm "formally denie[d] any and all liability" under the Policy and refused to compensate Ms. Rizka for any losses she claimed under the Policy. (*Id.*)

6

## PROCEDURAL HISTORY AND THE PARTIES' RESPECTIVE SUMMARY JUDGMENT THEORIES

**A.    Ms. Rizka Files Suit Against State Farm**

Ms. Rizka initially filed a Complaint against State Farm in Wayne County Circuit Court on November 11, 2013.  (ECF #1 at 4-9, Pg. ID 4-9.)  State Farm removed the action to this Court (*id.* at 1-2, Pg. ID 1-2), and Ms. Rizka thereafter filed a First Amended Complaint.  (*See* First. Am. Compl., ECF #10.)

In her First Amended Complaint, Ms. Rizka claims that "at all material times" she "was the owner" of the Woodcrest Home, and that State Farm "issued a policy of insurance" to her "covering" the home.  (*Id.* at ¶¶8-9.)  Ms. Rizka brings "a claim for breach of contract [against State Farm] for failure to pay property loss benefits on a valid and legitimate insurance claim."  (*Id.* at ¶7.)  Ms. Rizka also alleges that she "has suffered additional, extensive damages since the denial of the claim to which [State Farm] remains liable."  (*Id.*)  These "additional damages" (which State Farm refers to as "consequential damages") include $36,000 in alleged property theft (including the alleged theft of a diamond engagement ring), $14,400 in damages to the Woodcrest Home's roof, and $63,000 in unpaid "cost of living" expenses.  (*Id.* at ¶18.)

**B.    State Farm Moves for Summary Judgment Based on Judicial Estoppel**

Before taking any discovery, State Farm filed the instant motion for summary judgment.  (*See* State Farm Mot. at ECF #13.)  State Farm argues that the

7

doctrine of judicial estoppel bars Ms. Rizka's breach-of-contract claim. (*See, e.g., id.* at 14-22, Pg. ID 99-107.)  That doctrine a "bar[s] a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition."  *Lewis v. Weyerhauser Co.*, 141 Fed. App'x. 420, 425 (6th Cir. 2005) (internal quotation marks omitted).[2] State Farm argues that judicial estoppel bars Ms. Rizka's claim because (1) in 2011, the Bankruptcy Court accepted Ms. Rizka's sworn assertions that she had only $1,800 in personal property and that she owned no real property and (2) Ms. Rizka's current claim rests upon her fundamentally-inconsistent assertion that less than one year later she had over $160,000 in personal property and owned a home. (State Farm's Mot. and Br. at 16, Pg. ID 101 and 25-26, Pg. ID 110-111.)

State Farm argues in the alternative that if Ms. Rizka's entire claim is not barred by judicial estoppel, her claim for "consequential damages" should be dismissed because such damages are not available to her under Michigan law. (*Id.* at 26-28, Pg. ID 111-113.)

---

[2] State courts in Michigan have interpreted the doctrine similarly.  *See, e.g., Paschke v. Retool Indust.*, 445 Mich. 502, 509-510 (1994) (holding that under judicial estoppel, "a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding").

**C.**     **Ms. Rizka Asserts That Judicial Estoppel Does Not Bar Her Claim Because Her Sworn Statements to the Bankruptcy Court Are Not Inconsistent With Her Insurance Claim**

      **1.**     **Ms. Rizka Submits Affidavits in an Attempt to Negate Any Alleged Inconsistencies in Her Statements Regarding Personal Property**

Ms. Rizka contends that her statement to the Bankruptcy Court that she owned only $1,800 in personal property and her current claim for over $160,000 in personal property losses are not inconsistent.  (*See* Ms. Rizka's Br. at ECF #14.)[3] To support this position, Ms. Rizka has submitted several affidavits – from herself (ECF #14-4), her son Kamal (ECF #14-5), and Kamal's father, Mike Rizka (*see* ECF #14-3) – that address the ownership of the personal property that is the subject of the insurance claim.

These affidavits state that Ms. Rizka does not (and has never) owned the personal property.  The affiants say that Mike Rizka purchased "nearly all of the personal property" at the Woodcrest Home "for his children" and that eldest child Kamal, not Ms. Rizka, owned these items for his benefit and the benefit of his siblings.  (Ms. Rizka Aff. at ¶¶1-3; Kamal Rizka Aff. at ¶¶1-6; Mike Rizka Aff. at ¶¶1-4.)

---

[3] Ms. Rizka's opposition to State Farm's motion is premised on her assertion that her statements are not inconsistent.  She does not, for example, claim that she acquired the majority of the personal property that is subject of her insurance claim after her discharge from bankruptcy.

Ms. Rizka argues that since she is not the owner of the personal property that is the subject of the insurance claim, her statement to the Bankruptcy Court that she owned only $1,800 in personal property does not conflict with the insurance claim (which, she insists, she submitted on behalf of Kamal, the true owner of the property).[4]

## 2.      Ms. Rizka Asserts There is No Conflict Related to Her Ownership of the Woodcrest Home

Ms. Rizka likewise contends that her statement to the Bankruptcy Court that she did not own any real property is not in conflict with her current position that she owns the Woodcrest Home.  In an affidavit, Ms. Rizka says that she did not own the home at the time of her bankruptcy, and she appears to suggest that at some point after the bankruptcy, she acquired the home from Ms. Mercer via a quit-claim deed.  (Ms. Rizka Aff. at ¶¶7-9; *see also* Nahid Rizka EUO Testimony Vol. 3 at 33-35, Pg. ID 191-192.)  Alternatively, Ms. Rizka says that if she did, in fact, own the home at the time of her bankruptcy, she was unaware of that fact, and thus her failure to list the home as an asset was inadvertent and was due to advice from her bankruptcy attorneys.  (*See* Ms. Rizka Br. at 24, Pg. ID 297.)  Ms. Rizka says that an inadvertent failure to disclose the home to the Bankruptcy Court is not fundamentally inconsistent with her current position that she owns the home.  (*Id.*)

---

[4] Kamal qualifies as an "insured" under the Policy because he was a relative living in the home with Ms. Rizka at the time of the alleged property damage. (*See* the Policy at 4, Pg. ID 114.)

**D.     State Farm Argues That Ms. Rizka's Affidavits Are Insufficient to Defeat the Application of Judicial Estoppel and Are Otherwise Insufficient to Avoid Summary Judgment**

State Farm argues that under the "sham-affidavit" rule, Ms. Rizka may not defeat the application of judicial estoppel through the statements in her affidavits that she is not the owner of the personal property that is the subject of her insurance claim.  (State Farm Reply Br., ECF #19 at 2, Pg. ID 346.)  Under this rule, a party may not create an issue of fact to defeat a summary judgment motion by contradicting his or her own previous deposition testimony. *See Aerel, S.R.L. v. PCC Airfoils*, 448 F.3d 899, 906 (6th Cir. 2006).  State Farm insists that the statements in Ms. Rizka's affidavit that she does not own the personal property are flatly inconsistent with portions of Ms. Rizka's EUO testimony in which, State Farm contends, Ms. Rizka admitted that she owned the property.

State Farm highlights the following testimony by Ms. Rizka concerning the personal property inventory:

> Q:     Okay do you know which things [were listed on the personal property inventory you submitted to State Farm]?
>
> A:     When [the contractors who helped Ms. Rizka complete my insurance claim] first came in, they went  through the inventory and they seen *all my items*  and they went through the damaged things.
>
> Q:     When you say 'inventory,' you're talking about *your* property?

11

A:      Right.

(Nahid Rizka EUO Vol. 3 at 23, Pg. ID 189) (emphasis added).  State Farm also notes that during Ms. Rizka's EUO, she repeatedly referred to various items on the personal property inventory as "my" property.  (*See, e.g.*, "my clothes" (Nahid Rizka EUO Vol. 1 at 113, Pg. ID 174), "my diamond ring" (*id.* at 121, Pg. ID 176), and "my stuff." (Nahid Rizka EUO Vol. 3 at 8-9, Pg. ID 185.))  Ms. Rizka also identified a wedding dress as "mine."  (*Id.* at 24, Pg. ID 189.)  Finally, State Farm points out that during three different EUO sessions Ms. Rizka "never mention[ed] Kamal's ownership interest in [the personal property]."  (State Farm Reply Br. at 6, Pg. ID 350.)

State Farm likewise urges the Court to disregard Ms. Rizka's statements in her affidavit that (1) she became the owner of the Woodcrest Home only after her bankruptcy and (2) if she owned the home earlier, she was unaware of that fact. State Farm notes that Ms. Rizka applied for a homeowners insurance policy – one that, as its name suggests, is available only to persons who own homes – well before the bankruptcy and, thus, her current claims of recent-ownership and/or prior confusion concerning ownership are patently incredible and should be discarded.  (*Id.* at 6-7, Pg. ID 350-351.)

12

## GOVERNING LEGAL STANDARD

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. However, summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## LEGAL ANALYSIS

**A.    Ms. Rizka's Affidavits Create a Material Factual Dispute Regarding the Ownership of the Personal Property and Are Not Subject to Rejection Under the "Sham-Affidavit" Rule**

During oral argument, State Farm acknowledged (as it really had to do) that the affidavits Ms. Rizka submitted, on their face, are sufficient to create a material factual dispute about the ownership of the relevant personal property. The

affidavits offer an explanation for the apparent inconsistency between Ms. Rizka's sworn statements to the Bankruptcy Court and to State Farm about how much personal property she owned.  That explanation, if allowed to stand, precludes entry of summary judgment on State Farm's judicial estoppel defense as it relates to the personal property aspect of Ms. Rizka's claim. *See, e.g., Prince v. Allstate Insurance Company*, 2002 U.S. Dist. LEXIS 26889 at *16-*17 (E.D. Tenn. June 14, 2002) (denying summary judgment to insurance company on judicial estoppel defense because the plaintiff "proffer[ed] an explanation" for discrepancy between statements to bankruptcy court and insurance company regarding amount of personal property plaintiff owned); *Sentry Insurance v. Rice*, 2001 WL 2965799 (C.D. Ill. July 20, 2011) (same).

As noted above, State Farm attempts to invalidate the affidavits through the "sham-affidavit" rule.  (*See* State Farm Reply Br., ECF #19 at 2, Pg. ID 346.) State Farm argues that the rule bars the Court from considering the statements in Ms. Rizka's affidavits (from herself, Mike Rizka, and Kamal Rizka) that Kamal owned the personal property that is the subject of the current claims.  State Farm insists that those statements are flatly inconsistent with the affiants' EUO testimony. (*Id.*)

As an initial matter, it is not clear whether the "sham-affidavit" rule applies where the prior testimony is given at an EUO rather than at a deposition.  Neither

14

party has cited any decision in which a court has applied the rule in this precise context.  The United States Court of Appeals for the Seventh Circuit has suggested that the rule is not limited to contradictions between affidavits and prior deposition testimony, and that the rule may apply when an affidavit contradicts a variety of prior sworn statements.  *See Essick v. Yellow Freight Sys., Inc.*, 965 F.2d 334,334-335 (7th Cir. 1992) (applying rule to testimony given before Illinois Industrial Commission).  However, Ms. Rizka has cited at least one decision in which a court expressed reluctance about treating EUO testimony like deposition testimony for purposes of summary judgment.  *Zavakos v. St. Paul Surplus Lines Ins. Co.*, 2006 WL 83502 at *6-*7 (S.D. Ohio Jan. 12, 2006) (finding that it is "doubtful, at best, that an EUO is proper Rule 56 evidence").

This Court, though, need not resolve whether the "sham-affidavit" rule bars consideration of an affidavit that contradicts prior EUO testimony.  Even if the rule does apply in the context of prior EUO testimony, the Court would still be able to consider Ms. Rizka's affidavits because, on the record currently before the Court, the affidavits are not flatly inconsistent with her EUO testimony and other record evidence.[5]

---

[5] It well may be the case that State Farm will eventually be able to present evidence that establishes that Ms. Rizka's affidavits are flatly inconsistent with the objective factual evidence in the record and that summary judgment is therefore appropriate notwithstanding the affidavits. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly

State Farm places special weight on Ms. Rizka's repeated use of the word "my" during her EUO testimony to describe the property that is the subject of her claim. State Farm says that Ms. Rizka's description of the property as "my" or "mine" cannot be reconciled with the statement in her affidavit that the property was actually owned by Kamal. State Farm's argument certainly makes sense. And State Farm's reading of Ms. Rizka's prior sworn EUO testimony – as expressing that she owned the property that is the subject of her current insurance claim – may well be the better reading of that testimony. But it is not the only permissible reading of Ms. Rizka's use of the words "my" and "mine."

A speaker's use of the word "my" or "mine" in relation to property does not *necessarily* connote formal ownership of the property. For instance, an employee may ask a co-worker to stop by "my office," but that certainly does not mean that the employee is expressing an ownership interest in the office. Likewise, a judge may ask attorneys to appear at "my chambers," but that, too, is not meant to communicate that the judge actually owns the premises. So Ms. Rizka's use of the words "my" and "mine" during her EUO cannot be read as unequivocally communicating that she was the formal owner of the personal property in question – especially in light of the fact that she did not use those terms in response to

---

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

16

questions that specifically asked whether she owned the property.  And other portions of Ms. Rizka's testimony arguably suggest that she used the term "my property" to mean the property that was in the Woodcrest Home, rather than to identify property that she formally owned. (*See, e.g.*, Nahid Rizka EUO Vol. 2 at 10, Pg. ID 181; Vol. 3 at 8-9, Pg. ID 185.)

During the EUOs, State Farm did not specifically ask Ms. Rizka or any of the other witnesses to identify who actually owned the property that was the subject of the current insurance claim.  The failure to ask precisely about the ownership of the property cuts sharply against State Farm's invocation of the "sham-affidavit" rule.  Indeed, the United States Court of Appeals for the Sixth Circuit has instructed courts to use "a relatively narrow definition of a contradiction" when determining whether a subsequently-supplied affidavit contradicts earlier testimony, that a "deponent is under no obligation to volunteer information not fairly sought by the questioner," and that "a party who was not directly questioned about an issue at deposition" is permitted to file an affidavit to supplement the record.  *Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006) (internal citations and quotation marks omitted) (holding that because party "was not expressly asked" about the content of a specific conversation, "he should not be prevented from providing greater detail in a later affidavit").

17

There is no direct testimony in the EUOs that unequivocally contradicts the claim in the affidavits that Kamal, rather than Ms. Rizka, owned the relevant personal property.   Without such an unequivocal contradiction, the "sham-affidavit" rule does not bar consideration of the affiants' claim that Kamal, rather than Ms. Rizka, owns the personal property that is the subject of the claim.[6]

At the hearing, State Farm argued in the alternative that Ms. Rizka cannot prevail even if the Court does consider the affidavits.   More specifically, State Farm said that if the Court accepts the affiants' current assertion that Kamal is the owner of the personal property, then Ms. Rizka (a non-owner) lacks standing to bring a claim for breach of State Farm's obligation to pay for damage to the property.   However, the record and briefing on this issue are insufficient for State Farm to prevail at this point.   State Farm has not provided the Court with a copy of the Proof of Loss or Claim of Loss document that was used to initiate the claims process, and thus it is not clear whether the claim was submitted solely in Ms. Rizka's name or whether it was also submitted on behalf of Kamal.[7]   Likewise,

---

[6] Adding further ambiguity to the personal property ownership issue is the fact that the property inventory form that Ms. Rizka submitted to State Farm did not identify the property as owned by Ms. Rizka.  Instead, it identified the property as being located in the "Rizka Residence" (*see* Property Inventory at ECF #13-6) – a designation that is not inconsistent with Ms. Rizka's current assertion that the property was owned by Kamal.

[7] In Kamal's affidavit, he stated that Ms. Rizka submitted the claim because he was too busy to do so, but his affidavit does not provide any details concerning the names of the insureds listed on the claim.  (*See* Kamal Aff. at ¶7.)

18

State Farm has not cited any cases standing for the proposition that a policy holder (Ms. Rizka here) lacks standing to assert a claim on behalf of an insured (Kamal here) under a homeowners insurance policy. While State Farm may eventually prevail on its argument that Ms. Rizka lacks standing to bring a claim based upon State Farm's refusal to pay for personal property damage, it has not yet established its right to relief under that theory.

**B.**     **State Farm is Not Yet Entitled to Summary Judgment on its Defense That Judicial Estoppel Bars Ms. Rizka's Claim Based on Damage to the Woodcrest Home**

State Farm argues that judicial estoppel bars Ms. Rizka's claim for damages to the Woodcrest Home because (1) she represented to the Bankruptcy Court that she owned no real property and (2) that sworn statement is "glaringly inconsistent" with her current contention that she owns the home. (State Farm. Br. at 25, Pg. ID 110.)   In response, Ms. Rizka has proffered two explanations as to why her statements concerning the home are not fundamentally inconsistent.

First, Ms. Rizka has submitted an affidavit that suggests that she did not become the owner of the Woodcrest Home until after her bankruptcy proceedings concluded. (Ms. Rizka Aff. at ¶¶7-9; *see also* Nahid Rizka EUO Testimony Vol. 3 at 33-35, Pg. ID 191-192.) Thus, according to Ms. Rizka, her current claim of ownership is not in conflict with her earlier representation to the Bankruptcy Court that she owned no real property. At this point and on this record, Ms. Rizka's

19

current sworn statements that she did not own the Woodcrest Home until after the conclusion of her bankruptcy proceedings are sufficient to create a material factual dispute that precludes summary judgment on the basis of judicial estoppel.[8]

Second, Ms. Rizka contends that if she actually owned the home at the time of bankruptcy proceedings, judicial estoppel should still not apply because her failure to list the Woodcrest Home as an asset in her bankruptcy was "inadvertent" and a result of advice she received from her bankruptcy counsel.  (*See* Ms. Rizka Br. at 24, Pg. ID 297.)  *See, e.g., Doe v. Henke*, 2008 WL 4927256 at *4 (Mich. Ct. App. Nov. 18, 2008) (refusing to apply judicial estoppel to a malpractice claim not listed on a bankruptcy petition because there was no evidence of a deliberate omission).   Because State Farm has not yet taken any discovery (such as, for example, taking the deposition of Ms. Rizka's bankruptcy counsel and asking him about his conversations with Ms. Rizka concerning the extent of her real property and personal property ownership), it is not in a position to dispute – with citations to the record – Ms. Rizka's contention that any failure to disclose an ownership interest in the Woodcrest Home to the Bankruptcy Court resulted from the advice of counsel.

---

[8] It is possible that a fuller record – including, for instance, documents concerning legal ownership of the Woodcrest Home (i.e., deeds, land contracts, and mortgages) and any pre-bankruptcy documents Ms. Rizka executed in which she may have identified herself as owner of the home (especially her application for the Policy) – may support entry of summary judgment against Ms. Rizka.

When reviewing the current record in the light most favorable to Ms. Rizka, the Court concludes that at this time questions of material fact exist regarding whether Ms. Rizka's statements about her ownership of the Woodcrest Home are so inconsistent as to require the invocation of judicial estoppel.

## C.   State Farm is Not Yet Entitled to Summary Judgment on Ms. Rizka's Claim for Consequential Damages

State Farm argues that Ms. Rizka's claims for consequential damages fail because such damages are not available to her under Michigan law.  State Farm may well be right (at least in part), but it is too early to make that decision as a matter of law.

A plaintiff in a breach of contract action may recover those damages that "arise naturally from the breach" or are foreseeable and "can *reasonably* be said to have been in contemplation of the parties at the time the contract was made." *Lawrence v. Will Darrah & Associates, Inc.,* 445 Mich. 1, 13 (1994) (emphasis in original); *See also Parmet Homes, Inc. v. Republic Ins. Co.*, 111 Mich. App. 140, 150-151 (1981).

State Farm has not yet conducted any discovery on the issue of what damages arose naturally from its alleged breach, were foreseeable, and/or may have been contemplated at the time the Policy was issued.  Nor has State Farm identified any specific provision of the Policy that would foreclose Ms. Rizka's claim for consequential damages.  Finally, State Farm has not submitted an

affidavit from one its representatives indicating that when the Policy was issued, the parties did not foresee that it would cover damages similar to the consequential ones Ms. Rizka claims in this action.   The current record is thus insufficient to warrant entry of summary judgment on Ms. Rizka's claim for consequential damages at this time.

## **CONCLUSION**

At this early juncture in the case, State Farm is not entitled to summary judgment.   The Court therefore **DENIES** State Farm's motion **WITHOUT PREJUDICE**.   At the close of discovery, State Farm may renew its motion for summary judgment and may attempt to demonstrate how a more complete record supports entry of judgment in its favor.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 8, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 8, 2014, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

22