UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAHID RIZKA,

     Plaintiff,                              Case No. 13-cv-14870
                                         Hon. Matthew F. Leitman

v.

STATE FARM FIRE AND
CASUALTY COMPANY,

     Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF #45)

## INTRODUCTION

In August 2011, Plaintiff Nahid Rizka ("Ms. Rizka") declared personal bankruptcy. Ms. Rizka had nearly $45,000 in credit card debt, no job, few assets to speak of, and no way to pay her bills. Ms. Rizka said in her sworn bankruptcy schedules that she (1) did not own any real property – and was renting her home – and (2) owned only $1,800 in personal property. Less than a year later, Ms. Rizka's home suffered water damage; personal property in the home was also damaged. Ms. Rizka then filed a homeowners insurance claim with Defendant State Farm Fire and Casualty Company ("State Farm"). She swore to State Farm that she personally owned the home and the damaged personal property. She sought more than $250,000 for damage to the home and more than $200,000 for

1

the personal property she claimed to have lost.  State Farm denied Ms. Rizka's claim as fraudulent.

Ms. Rizka thereafter filed this action in which she alleges that State Farm failed to pay her "valid and legitimate insurance claim." (*See* First Amended Complaint, ECF #10 at ¶7.)  State Farm continues to deny that the claim is valid. State Farm has now moved for summary judgment on the basis of judicial estoppel and on the ground that Ms. Rizka forfeited her right to coverage by making "repeated misrepresentations of material fact" during the claims process (the "Motion").  (ECF #45 at 18, Pg. ID 666.)  The Court concludes that State Farm is entitled to relief on both grounds.

Indeed, this case cries out for application of both judicial estoppel and the fraud bar to coverage because Ms. Rizka's positions with respect to the ownership of the home and the personal property have shifted like the proverbial sands.  And not coincidentally, Ms. Rizka has always taken the position that is most favorable to her.  When it was in her interest to appear penurious (like it was in the bankruptcy), she claimed that she did not own the home or the personal property. But when it was in her interest to own the home and the personal property (like in this action and/or when seeking coverage from State Farm), she claimed to own both.  Even worse, she has taken these irreconcilable positions under oath.  It would be contrary to the consistent and fair administration of justice to permit Ms.

2

Rizka to pursue her claims for insurance coverage in this action.  Accordingly, for the reasons stated in this Opinion and Order, the Court **GRANTS** summary judgment in favor of State Farm.

## RELEVANT FACTUAL BACKGROUND

The Court included a detailed recitation of the relevant factual background and procedural history in its July 8, 2014, Opinion and Order denying State Farm's first summary judgment motion.  (*See* ECF #23 at 2-12, Pg. ID 415-425.)  The Court incorporates that factual recitation and sets forth below a summary of the factual background as well as any additional facts that are relevant to a determination of the Motion.

In 2002, Ms. Rizka and her four children (Kamal, Summer, Tarek, and Mike) began living in a home at 435 Woodcrest in Dearborn, Michigan (the "Woodcrest Home"). (*See* Ms. Rizka November 1, 2012, Examination Under Oath Transcript at 9-12, ECF #13-3 at 4-5, Pg. ID 148-149.)  The Woodcrest Home was originally purchased by the father of Ms. Rizka's children.  (*See id.* at 38-40, ECF #13-3 at 12, Pg. ID 156.)  He lost the home to foreclosure in 2005.  (*See id.*)  In 2006, Ms. Rizka's sister, Georgina Mercer ("Mercer"), purchased the Woodcrest Home for Ms. Rizka.  (*See* Ms. Rizka March 23, 2015, Deposition Transcript at 26, ECF #45-2 at 122, Pg. ID 800.)  Mercer paid $250,000 for the Woodcrest Home, and Ms. Rizka contributed $20,000 towards the purchase price.  (*See* Mercer

March 19, 2014, Examination Under Oath Tr. at 15-16, ECF #47-4 at 16-17, Pg. ID 1130-1131; *see also* Ms. Rizka March 23, 2015, Deposition Tr. at 81, ECF #45-2 at 136, Pg. ID 814.)  Mercer took out a mortgage on the property, and has been the mortgagor ever since.  (*See* Mercer March 19, 2014, Examination Under Oath Tr. at 25, ECF #47-4 at 26, Pg. ID 1140.)

In 2008, Ms. Rizka applied for a State Farm homeowners insurance policy for the Woodcrest Home. (*See* Application Screenshots, ECF #45-2 at 2-3, Pg. ID 681-682.)  After reviewing her application, State Farm issued a homeowners policy to Ms. Rizka for the Woodcrest Home (the "Policy"). (*See* the Policy, ECF #45-2 at 5-37, Pg. ID 683-715.)

In August 2011, Ms. Rizka declared personal bankruptcy.  (*See* Chapter 7 Bankruptcy Petition, ECF #45-2 at 39-42, Pg. ID 717-720.)  During her bankruptcy proceedings, Ms. Rizka swore under oath in the asset schedules to her bankruptcy petition that she did not own *any* real property and did not own any interest of any kind in any such property.  (*See id.* at 45, Pg. ID 723.)  Ms. Rizka stated in her bankruptcy schedules that she leased the Woodcrest Home from Mercer on a "month-to-month residential rental," and she identified her "rental" payment as monthly expenditure.  (*See id.* at 57, 61, 78, Pg. ID 735, 739, 756.)  Ms. Rizka also stated in her bankruptcy schedules that she possessed only $100 in "cash in hand" and owned just $1,500 in "household goods and furnishings" and $200 in

4

"clothing."   (*Id.* at 46, Pg. ID 724.)   Finally, Ms. Rizka signed her bankruptcy petition under oath in order to confirm that she had reviewed the schedules and that they were truthful and accurate:

> I declare under the penalty of perjury *that I have read the foregoing summary and schedules* … and that they are true and correct to the best of my knowledge, information and belief.

(*Id.* at 62, Pg. ID 740; emphasis added.)

On September 8, 2011, the bankruptcy court held an on-the-record Meeting of Creditors. (S*ee* Docket, *In Re: Nahid Rizka*, Case No. 11-61546 (Bankr. E.D. Mich. 2011)).   Ms. Rizka personally appeared at the meeting, took an oath, and again specifically stated that she had read her bankruptcy petition and the attached schedules and confirmed that they were accurate. (*See In Re: Nahid Rizka* Meeting of Creditors, September 8, 2011, Tr. at 3-4, included as Exhibit A to this Opinion and Order).   Ms. Rizka also confirmed under oath that she had not owned any real property in the preceding six years. (*See id.* at 4.)   The bankruptcy court granted Ms. Rizka a discharge on November 8, 2011 – one that had the effect of wiping away her entire debt load of over $45,000. (*See* Discharge, ECF #45-2 at 86, Pg. ID 764.)

In July 2012 (less than one year after Ms. Rizka exited bankruptcy), the Woodcrest Home suffered water damage.  Ms. Rizka then made an insurance claim with State Farm.  As part of her claim, Ms. Rizka submitted two sworn "Proof of

5

Loss" statements: one for the Woodcrest Home and one for the personal property in the home.  (*See* Proofs of Loss, ECF #45-2 at 92-93, Pg. ID 770-771.)  In the Proof of Loss statement for the Woodcrest Home, Ms. Rizka swore that she was the "OWNER" of the home "at the time of loss" and that she had been the "OWNER" since at least July 30, 2011, when the Policy was last renewed.[1]  (*See id.* at 93, Pg. ID 771.)  In the Proof of Loss statement for the damaged personal property, Ms. Rizka swore that she was the "OWNER" of the damaged property, and that "[n]o other person or persons had any interest" in the personal property.  (*Id.* at 92, Pg. ID 770.)  Ms. Rizka claimed the replacement cost of the damaged personal property was $200,413.76.  (*See id.*)

Following a lengthy investigation, State Farm denied Ms. Rizka's insurance claim.  State Farm concluded that Ms. Rizka "intentionally misrepresented and concealed material facts and circumstances relating to [her claimed] loss and [that she had] committed fraud relating to [the] loss which bar[red] [her] claim and void[ed] the [P]olicy effective July 8, 2012."  (Rejection Letter, ECF #13-7.)

---

[1] In the Proof of Loss, Ms. Rizka represented to State Farm that there had been "no change of interest" in the ownership of the Woodcrest Home "since [the Policy] was issued" on July 30, 2011. (*See* Proof of Loss, ECF #45-2 at 93, Pg. ID 771.) Ms. Rizka also said that her sister (Mercer), her brother-in-law, and a mortgage company had undefined "interest[s]" in the Woodcrest Home.  (*See id.*)  But Ms. Rizka unambiguously declared herself as Woodcrest Home's "OWNER."  (*Id.*)

## PROCEDURAL HISTORY

On April 2, 2014, Ms. Rizka filed a First Amended Complaint in this action. Ms. Rizka alleged, among other things, that she owned the Woodcrest Home "[a]t all material times" and that she was thus entitled to coverage under the Policy. (First Am. Compl., ECF #10 at ¶¶ 7-10.)

Before completing discovery, State Farm moved for summary judgment on the basis of judicial estoppel. (*See* ECF #13.) State Farm argued that Ms. Rizka was estopped from claiming to own the Woodcrest Home and personal property in this action because she swore to the bankruptcy court that she did not own the home and property. (*Id.*)

The Court denied State Farm's motion as premature on July 8, 2014. (*See* ECF #23.) Specifically, the Court noted that the record was incomplete and did not contain important documentation with respect to Ms. Rizka's insurance claim, including any Proof of Loss statements. (*See id.* at 3 n.1, 18, Pg. ID 416, 431.) The Court told State Farm that it could file a second summary judgment motion following discovery and after the development of a more complete record. (*See id.* at 22, Pg. ID 435.)

Discovery is now complete, and State Farm has once again moved for summary judgment. (*See* ECF #45.) State Farm argues that it entitled to summary judgment "pursuant to the doctrine of judicial estoppel, due to [Ms. Rizka's]

7

international manipulation of the courts, and her repeated misrepresentations of material fact to both State Farm and the courts." (*Id.* at 18, Pg. ID 666.)  The Court held oral argument on the Motion on November 18, 2015.

## GOVERNING LEGAL STANDARD

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252.  However, summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252.  Finally, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## LEGAL ANALYSIS

**A.   Ms. Rizka is Judicially Estopped From Claiming Ownership of the Woodcrest Home and Obtaining Insurance Benefits for Alleged Damage to the Home**

"The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'"[2] *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).  The doctrine "is utilized in order to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship."  *White*, 617. F.3d at 476 (internal quotation marks omitted).  *See also Blanton v. Inco Alloys Int'l., Inc.*, 108 F.3d 104, 108 (6th Cir. 1997) (judicial estoppel is designed to prevent manipulation "by chameleonic litigants").   "Courts have used a variety of metaphors to describe the doctrine, characterizing it as a rule against playing fast and loose with the courts, blowing hot and cold as the occasion demands, or having one's cake and eating it too." *Reynolds v. C.I.R.*, 861 F.2d 469, 472 (6th Cir. 1988) (internal citations and punctuation omitted).

---

[2] "Federal standards govern the application of judicial estoppel in federal court." *Warda v. C.I.R.*, 15 F.3d 533, 538 n.4 (6th Cir. 1994).

The Sixth Circuit has explained that in order to apply judicial estoppel based on a position taken by a party in an earlier bankruptcy proceeding, a district court "must find" that:

> (1) [a party] assumed a position that was contrary to the one that [the party] asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the party's] omission did not result from mistake or inadvertence.

*White*, 617 F.3d at 478.

The evidence here easily satisfies all three elements.

### 1.    Ms. Rizka Assumed a Position in This Action That is Contrary to the Position She Asserted in Her Bankruptcy Proceedings

As described in detail above, Ms. Rizka made repeated sworn statements to the bankruptcy court in 2011 that (1) she did *not* own any real property and (2) she was renting the Woodcrest Home.  (*See, e.g.,* Bankruptcy Schedules, ECF #45-2 at 45, 57, Pg. ID 723, 735.)  Yet here she alleges that she *owned* the Woodcrest Home "[a]t *all* material times," including at the time of the water damage less than one year after she exited bankruptcy.  (*See* First Am. Compl., ECF #10 at ¶8 (emphasis added); *see also* Proof of Loss, ECF #45-2 at 93, Pg. ID 771.)

These two positions are not inherently contradictory.  It is at least theoretically possible that a person could be renting a home while in bankruptcy and then, shortly after exiting bankruptcy, could acquire sufficient assets to

purchase the home (or could even receive the home as a gift or as part of an inheritance after leaving bankruptcy).  But none of that happened here.

In fact, the undisputed evidence on this record excludes the possibility that Ms. Rizka purchased or otherwise acquired the Woodcrest Home between the time she exited bankruptcy and the time of the water loss.  In a sworn statement to State Farm, Ms. Rizka confirmed that the ownership status of the home did *not* change during that period. (*See* Proof of Loss, ECF #45-2 at 93, Pg. ID 771.[3])  Moreover, there is absolutely no evidence that Ms. Rizka had the financial means to purchase the Woodcrest Home in the year after her bankruptcy was discharged.  On the contrary, Ms. Rizka has testified that she does not work and that her primary source of income has been disability payments.  (*See* Ms. Rizka March 23, 2015, Dep. Tr. at 18, ECF #45-2 at 120, Pg. ID 798.)  Finally, there is no evidence that Ms. Rizka inherited the Woodcrest Home or received the home as a gift in the year after her bankruptcy.

Thus, on this record, there is no way to reconcile Ms. Rizka's statement to the bankruptcy court that she owned no real property (and was renting the Woodcrest Home) with her assertion in this action that she owned the home "[a]t all material times," including at the time of the water loss.  The statements are

---

[3] In the Proof of Loss, Ms. Rizka swore that the ownership status of the Woodcrest Home did not change between July 30, 2011, and July 30, 2012.  This period included the time between Ms. Rizka's exit from bankruptcy (on November 8, 2011) and the water loss (July 8, 2012).

contrary to one another, and the first element for application of judicial estoppel is therefore satisfied.

### 2.      The Bankruptcy Court Adopted Ms. Rizka's Contrary Position

Based in part on Ms. Rizka's repeated sworn statements that she did not own any real property, the bankruptcy court discharged over $45,000 in debts Ms. Rizka had incurred.   (*See* Discharge, ECF #45-2 at 86, Pg. ID 764.)   The bankruptcy court thereby adopted Ms. Rizka's position that she owned no real property. *See Stephenson v. Malloy*, 700 F.3d 265, 274 (6th Cir. 2012) (holding that by granting discharge, bankruptcy court adopted debtor's listing of his assets on his bankruptcy schedules); *Bone v. Taco Bell of America*, *LLC*, 956 F. Supp. 2d 872, 881-882 (W.D. Tenn. 2013) (same).

### 3.      Ms. Rizka's Omission Did Not Result From Mistake or Inadvertence

"In determining whether [a party's] conduct resulted from mistake or inadvertence, [a] court considers whether: (1) [the party] lacked knowledge of the factual basis of the undisclosed [assets]; (2) [the party] had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *White*, 617 F.3d at 472.  The Court will address each of these factors in turn.

### a.    Ms. Rizka's Claimed Lack of Knowledge is Contrary to the Record

Ms. Rizka argues that there is a material factual dispute as to whether she "unknowingly and unintelligently" identified herself as a mere tenant of the Woodcrest Home (and not an owner) in her bankruptcy schedules. (Ms. Rizka Supp. Br., ECF #56 at 7, Pg. ID 1465.)  This argument, though somewhat difficult to follow, appears to proceed through the following steps:

Step 1 – When Ms. Rizka filed bankruptcy, it was far from clear whether she actually owned the Woodcrest Home. (*See* Ms. Rizka Supp. Br., ECF #56 at 4-7, Pg. ID 1462-1465.)

Step 2 – Ms. Rizka did her best to understand her ownership status, and she reasonably developed "an honest, good-faith belief that she did not own the [Woodcrest] [H]ome…." (*Id.* at 5, Pg. ID 1463.)

Step 3 – More specifically, Ms. Rizka believed that she was a tenant – not an owner – of the Woodcrest Home because her sister took out the mortgage on the home and the mortgage was not yet fully paid. (*See* Ms. Rizka Affidavit at ¶¶ 7-9, ECF #45-3 at 2, Pg. ID 854; Ms. Rizka March 23, 2015, Dep. Tr. at 26, ECF #45-2 at 122, Pg. ID 800.)[4]

Step 4 – Based upon that belief, Ms. Rizka made the "assertion" in her bankruptcy schedules that she was a tenant of the Woodcrest Home and did not own the home. (Ms. Rizka Supp. Br., ECF #56 at 5, Pg. ID 1463.)

---

[4] In Ms. Rizka's supplemental brief, her counsel argues that a number of factors – including issues related to quit claim deeds and land contracts – led Ms. Rizka to believe that she was a tenant of the Woodcrest Home, not the home's owner. (*See* Ms. Rizka Supp. Br., ECF #56 at 6-7, Pg. ID 1464-1465.).  But Ms. Rizka, in her sworn affidavit, identified only a single factor that supposedly led her to conclude that she was a tenant: the fact that her sister took out the mortgage and it remained unpaid. (*See* Ms. Rizka Aff. at ¶¶ 8-9, ECF #45-3 at 2, Pg. ID 854.)

Step 5 – Because that "assertion" may have resulted from a good-faith mistake about her true legal status with respect to the home, there is at least a material factual dispute as to whether Ms. Rizka acted knowingly and intelligently. (Ms. Rizka Supp. Br., ECF #56 at 4-7, Pg. ID 1462-1465.)

This argument fails at Steps 2 and 3 because, as explained below, Ms. Rizka's own sworn deposition testimony conclusively proves that when she filed for bankruptcy, she considered herself an *owner* of the Woodcrest Home, not a tenant. Thus, Ms. Rizka's theory as to how she "unknowingly" identified herself as a mere tenant cannot be squared with the evidence in the record.

Ms. Rizka testified that when she met with her bankruptcy attorney to prepare her filing, she told him that her while her sister "pulled the mortgage" on the Woodcrest Home, she (Ms. Rizka) nonetheless "*owned* [the] home." (Ms. Rizka March 23, 2015, Dep. Tr. at 77-78, ECF #45-2 at 135, Pg. ID 813; emphasis added.) Ms. Rizka then testified that she considered herself the *owner* of the Woodcrest Home, not a tenant, even though the mortgage had not been paid off in full and even though the home was titled in her sister's name:

> Q.   Did you consider yourself the owner or a tenant at the time [you were speaking to your bankruptcy attorney]?
>
> A.   Um, until it's actually paid off, I mean, *it's mine*, but it's not paid off yet. It's still in her name.
>
> Q.   So what did you consider yourself?

14

### A.    *The owner.*

(*Id.* at 81-82, ECF #45-2 at 136, Pg. ID 814; emphasis added.)   Later in her

deposition, Ms. Rizka again confirmed that "when [she] filed for bankruptcy," she

believed that she held "an *ownership* interest in the [Woodcrest Home]." (*Id.* at 88,

Pg. ID 815; emphasis added.)[5]

In addition, Ms. Rizka's actions during the past eight years belie her claim

that she believed she was a mere tenant of the Woodcrest Home because her

sister's name was on the mortgage.  Ms. Rizka has repeatedly identified herself as

the owner of the home even though her sister's name has been on the mortgage.

For example:

- In 2008, long after her sister took out the mortgage, Ms. Rizka applied for the Policy.  (*See* Application Screenshots, ECF #45-2 at 2-3, Pg. ID 681-682.)  The Policy is a *homeowners* insurance policy, not a renters policy. Ms. Rizka confirmed at her deposition that the fact that she "had procured *homeowner's* insurance for the [Woodcrest Home]" in her own name "also establish[ed her as] the *owner* of the [home]." (Ms. Rizka March 23, 2015, Dep. Tr. at 82, ECF #45-2 at 136, Pg. ID 814; emphasis added.)

- Less than a year after she emerged from bankruptcy, even though her sister's name was still on the mortgage, Ms. Rizka swore in her Proof of Loss that she was the "OWNER" of the Woodcrest Home.  (Proof of Loss, ECF #45-2 at 93, Pg. ID 771).  Notably, in the Proof of Loss, Ms. Rizka specifically

---

[5] Ms. Rizka testified that in 2005, she had an expectation that she would own the Woodcrest Home in the future. (*See* Ms. Rizka March 23, 2015, Dep. Tr. at 30, ECF #45-2 at 123, Pg. ID 801.)  But that testimony does not create a material factual dispute as to whether Ms. Rizka made a good-faith mistake when she identified herself as a tenant in her bankruptcy schedules six years later.  As explained above, Ms. Rizka's testimony makes clear that when she filed for bankruptcy, she believed that she owned the Woodcrest Home.

identified her sister, brother-in-law, and a mortgage company as holding encumbrances on the Woodcrest Home, but she (Ms. Rizka) nonetheless identified herself as "OWNER." (*Id.*)

- Likewise, during an Examination Under Oath taken by State Farm before this action began (and with her sister's name still on the mortgage), Ms. Rizka again testified unequivocally that she owned the Woodcrest Home. (*See* Ms. Rizka November 1, 2012, Examination Under Oath Tr. at 24, ECF #13-3 at 8, Pg. ID 152.)

- Even though Ms. Rizka's sister's name remains on the mortgage to this day, Ms. Rizka alleged in her First Amended Complaint that she (Ms. Rizka) *owned* the home "[a]t *all* relevant times."  (First. Am. Compl., ECF #10 at ¶8; emphasis added.)

Simply put, the record contains clear and overwhelming evidence that Ms. Rizka believed that she *owned* the Woodcrest Home when she filed for bankruptcy but that she nonetheless listed herself as a tenant in her bankruptcy schedules.  That course of action hardly qualifies as a good-faith mistake.  Indeed, on this record, no reasonable juror could accept Ms. Rizka's theory that she made a good-faith mistake when she listed herself as a tenant in her bankruptcy schedules. [6]

---

[6] As noted above, Ms. Rizka submitted an affidavit in this action in which she stated that she believed she was a mere tenant of the Woodcrest Home, and would not become the owner of the home, until the mortgage was fully paid off. (*See* Ms. Rizka Aff. at ¶¶ 7-9, ECF #45-3 at 2, Pg. ID 854.)  But under the "sham affidavit" rule, these statements do not create a material factual dispute as to what Ms. Rizka believed because they directly contradict her later sworn deposition testimony quoted above. *See Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997).  And while this rule most often applies to affidavits submitted *after* a party's deposition, it applies with equal force to sworn statements made *before* a party's deposition that are directly contradicted by later deposition testimony.  *See, e.g.*, *In re: CitX Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006); *Darnell v. Target Stores*, 16 F.3d 174, 177 (7th Cir. 1994), overruled on other grounds, *Hill v.*

### b.  Ms. Rizka Had a Motive to Conceal Her Ownership of the Woodcrest Home

Ms. Rizka indisputably had a motive during her bankruptcy to conceal her ownership interest in the Woodcrest Home.  As the Sixth Circuit has explained, "[i]t is always in a [bankruptcy] petitioner's interest to minimize income and assets."  *White*, 617 F.3d at 479 (quoting *Lewis v. Weyerhaeuser Co.*, 141 Fed. App'x 420, 426 (6th Cir. 2005)).  By identifying the Woodcrest Home as a "rental" and claiming her monthly lease payments as a monthly expenditure, Ms. Rizka both decreased her assets and inflated her liabilities.  Thus, the uncontroverted evidence establishes that Ms. Rizka had a motive to conceal her ownership of the Woodcrest Home during her bankruptcy proceedings.

### c.  The Evidence Does Not Indicate an Absence of Bad Faith

When "determining whether there was an absence of bad faith, [courts] will look, in particular, at [a party's] 'attempts' to advise the bankruptcy court of [an]

---

*Tangherlini*, 724 F.3d 965 (7th Cir. 2013).  In fact, this Court has previously applied the sham affidavit rule to bar consideration of a contradictory statement in a pre-deposition affidavit. *See Garrish v. United Automobile, Aerospace, and Agricultural Implement Workers of America*, 284 F. Supp. 2d 782, 785 (E.D. Mich. 2003).  Finally, it is appropriate for the Court to disregard Ms. Rizka's affidavit as a "sham" now even though the Court declined to do so when deciding State Farm's earlier motion for summary judgment. (*See* July 8, 2014, Opinion and Order at 13-19, Pg. ID 426-432.)  The Court's earlier ruling related to a different part of Ms. Rizka's affidavit, not her representations about the Woodcrest Home.  Moreover, the basis for now finding the affidavit to be a "sham" – Ms. Rizka's deposition testimony cited above – did not exist when the Court ruled on State Farm's earlier motion.

omitted [asset]." *White*, 617 F.3d at 478. Such attempts to correct the record are important because "[t]he disclosure obligations of consumer debtors are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving the bankruptcy discharge." [7] *Id.* at 480 n.7.

Here, Ms. Rizka has never attempted to correct or amend her bankruptcy filings to reflect her ownership interest in the Woodcrest Home. Her failure to do so weighs heavily against a finding of an absence of bad faith. *See White*, 617 F.3d at 480 (finding plaintiff had not identified a lack of bad faith and applying judicial estoppel where plaintiff made only "limited and ineffective attempts to correct" her inaccurate bankruptcy filing); *Lewis*, 141 Fed. App'x at 427 (finding plaintiff had not identified a lack of bad faith and applying judicial estoppel where plaintiff "never sought to amend her bankruptcy schedules" nor made any other effort to inform bankruptcy court of inaccuracy).

----

[7] In *White*, the Sixth Circuit placed the burden on the plaintiff to produce evidence of a lack of bad faith where the defendant had come forward with evidence satisfying all of the other elements of judicial estoppel. *See White*, 617 F.3d at 478 n.4 ("Since [d]efendant's have come forward with [] evidence [that plaintiff had knowledge of asset and motive to conceal the asset], [plaintiff] must now point out evidence that shows an absence of bad faith"). Here, as explained above, State Farm has satisfied all of the other elements of judicial estoppel, and thus, under *White*, it is Ms. Rizka's burden to identify evidence that she lacked bad faith. She has not done so. But even if State Farm had the burden, the Court's lack-of-bad-faith analysis and conclusion would remain the same. On this record and under controlling Sixth Circuit precedent, the Court could not possibly find "an absence of bad faith." *White*, 617 F.3d at 478.

Moreover, there is evidence that Ms. Rizka has conducted herself in bad faith – in the bankruptcy proceedings, in these proceedings, and/or in both.  For example, when State Farm questioned Ms. Rizka in this action about her bankruptcy schedules, she testified under oath that she had "never" seen them before. (*See* Ms. Rizka March 23, 2015, Dep. Tr. at 110-13, ECF #45-2 at 143-44, Pg. ID 821-22.)   But at the Meeting of Creditors during her bankruptcy proceedings, Ms. Rizka swore under oath that she had read *all* of the schedules and personally confirmed their accuracy and completeness. (*See In Re: Nahid Rizka* Meeting of Creditors, September 8, 2011, transcript included as Exhibit A to this Opinion and Order).  One of these sworn statements is false.

Likewise, when State Farm first raised its judicial estoppel argument in this action, Ms. Rizka submitted a sworn affidavit in which she said that she believed that she was "a tenant" of the Woodcrest Home, not its owner. (Ms. Rizka Aff., ECF #45-3 at 2, ¶8, Pg. ID 854.)  As detailed above, Ms. Rizka's affidavit flatly contradicts her repeated sworn testimony and statements that she regarded herself as the owner of the home at the time she filed bankruptcy.  Ms. Rizka's attempt to stave off summary judgment by submitting such an affidavit raises serious questions about whether she has proceeded in good faith.

Judicial estoppel is intended to prevent litigants from "playing fast and loose with the courts," *Reynolds*, 861 F.2d at 472 (internal quotation marks omitted),

19

and that is what Ms. Rizka has done.  Indeed, Ms. Rizka's conduct is precisely that which judicial estoppel is designed to guard against.

### 4.   Ms. Rizka's Arguments Against Applying Judicial Estoppel Do Not Save Her Claim

Ms. Rizka offers two primary counter-arguments as to why she should not be judicially estopped from claiming that she owned the Woodcrest Home.  First, Ms. Rizka argues that "judicial estoppel is not appropriate where a party has relied on the advice of counsel," and she says that she relied on the erroneous advice of her bankruptcy lawyer when she told the bankruptcy court that she did not own the Woodcrest Home. (*See* Rizka Supp. Br., ECF #56 at 7, Pg. ID 1465.)  According to Ms. Rizka, she told her bankruptcy attorney that she owned the Woodcrest Home, but he told her not to list it as an asset in her bankruptcy schedules:

> Q:   Did you tell [your bankruptcy attorney] that you did not own any real estate?
>
> [….]
>
> A:   I told [my bankruptcy attorney] I owned my home [i.e., the Woodcrest Home], but the home is not in my name.  It's in my sister's name.  So he advised me not to claim my home because there's a mortgage owed on it in my sister, Georgina Mercer's, name
> [….]
>
> Q:   But you said you told him you owned the home?

> A:   I told him it's my home, but my sister pulled out the mortgage.  So he said basically [it is] your sister's home because the mortgage is in her name.

(Ms. Rizka March 23, 2015, Dep. Tr. at 77-78, ECF #45-2 at 135, Pg. ID 813.)

Ms. Rizka says she should not be estopped because she acted on this advice.

But "the general rule" is "that litigants are bound by the actions of their attorneys," *Lewis*, 141 Fed. App'x at 427-428, and under that rule a plaintiff may be judicially estopped from contradicting her prior statement in a bankruptcy schedule even if she made the statement based upon the erroneous advice of counsel.  That is precisely what the Sixth Circuit held in *Lewis*.  The plaintiff in *Lewis* argued that she should not be judicially estopped from taking a position that was contrary to statements she made in her bankruptcy schedules because she made those statements in reliance on bad advice from her bankruptcy attorney and/or his paralegal.  The Sixth Circuit rejected that argument and applied judicial estoppel against the plaintiff because she "present[ed] no compelling reason to depart from the general rule" that she was bound by her attorney's actions.  *Id.* The Sixth Circuit added that a departure from the general rule would have been especially inappropriate because there was evidence that the plaintiff acted "in bad faith." *Id*. at 428-29. [8]

---

[8] Though *Lewis* is unpublished, the Sixth Circuit adopted its analytical framework and applied it in *White, supra*.  The Sixth Circuit again treated *Lewis* favorably in *Stephenson, supra*.  The Eleventh Circuit and the Seventh Circuit have also applied

*Lewis* persuades the Court that Ms. Rizka may not avoid judicial estoppel on the ground that she relied on her bankruptcy attorney. Like the plaintiff in *Lewis*, Ms. Rizka has not presented any "compelling reason" to depart from the general rule binding her to the actions and advice of her attorney. And, as in *Lewis*, there is evidence that Ms. Rizka conducted herself in bad faith. *Lewis* makes clear that a plaintiff may not avoid judicial estoppel under these circumstances.

The case law cited by Ms. Rizka does not support her argument that she may avoid judicial estoppel because she relied on her attorney. Ms. Rizka primarily relies on *Pennycuff v. Fentress County Board of Education*, 404 F.3d 447 (6th Cir. 2005). In that case, a school board argued that a teacher had not attained, and was not entitled to, tenure. In a prior state court action, the school board admitted the plaintiff's allegation that he had "acquired tenure." The plaintiff then argued that the school board's admission in the state court action judicially estopped the board from denying his tenure status in the federal action. The Sixth Circuit disagreed, and in the course of its analysis, it observed that the school board "relied on the advice of counsel" in making its prior admission. *Id.* at 453.

---

judicial estoppel against a party who claimed to have made prior statements based upon bad advice from counsel. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006) (rejecting plaintiff's reliance on attorney's advice to avoid judicial estoppel and holding that "bad legal advice does not relieve the client of the consequences of her own acts"); *Barger v. City of Cartersville, Gerogia*, 348 F.3d 1289, 1295 (11th Cir. 2003) (same). The Sixth Circuit in *Lewis* and *White* expressly relied upon the Eleventh Circuit's decision in *Barger*.

22

But the Sixth Circuit also stressed that (1) the state court never "accepted or relied upon the [board's] admission that [the plaintiff] was a tenured teacher," (2) the plaintiff's tenure status "was not at issue" in the state court proceeding, and (3) the board was not attempting to "play fast and loose with the courts." *Id.* (internal punctuation omitted). These features of *Pennycuff* sharply distinguish it from this action. Here, the real property owned by Ms. Rizka was "at issue" in the bankruptcy proceedings; the bankruptcy court did rely on her statement that she owned no real property; and there is substantial evidence that she is attempting to play "fast and loose." The Sixth Circuit in *Lewis* confirmed that *Pennycuff* does not support application of judicial estoppel under these circumstances – even if the plaintiff arguably acted on the advice of counsel in a prior action. *Lewis*, 141 Fed. App'x at 428-429 (distinguishing *Pennycuff*).[9]

Second, Ms. Rizka argues that State Farm is not entitled to summary judgment on its judicial estoppel defense because there are "[g]enuine issues of material fact with regard to the ownership of the [Woodcrest] Home." (Ms. Rizka Br., ECF #47 at 10, Pg. ID 1018.) But a determination of who actually owns the

---

[9] Ms. Rizka also cites *Doe v. Henke*, 2008 WL 4927256 (Mich. App. Nov. 18, 2008) and *Sharp v. Oakwood United Hospitals*, 458 F. Supp. 2d 463 (E.D. Mich. 2006), as support for her argument that judicial estoppel does not apply because she relied on the advice of her attorney. But there was no indication in either of those cases that the plaintiffs were attempting to play fast and loose or acted in bad faith. Thus, those cases do not help Ms. Rizka.

Woodcrest Home is immaterial to State Farm's judicial estoppel defense. The issue raised by the defense turns on whether Ms. Rizka's statements to the bankruptcy court – and the position she took in her bankruptcy – that she did not own the Woodcrest Home bars her from asserting in this action that she did own the home and is thus entitled to coverage under the Policy. The resolution of that issue has nothing to do with who actually owned the Woodcrest Home. Thus, the claimed factual dispute as to who owned the Woodcrest Home is not material to, and is no bar to summary judgment on, the judicial estoppel defense.

**B.  Ms. Rizka Made Fraudulent Statements to State Farm in Connection With Her Personal Property Claim, and Those Statements Void Entirely Ms. Rizka's Right to Coverage Under the Policy**

As part of its defense in this action, State Farm has invoked the "Concealment or Fraud" provision of the Policy. That provision states:

> This policy is void as to you and any other insured if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

(Policy at 20, ECF #45-2 at 31, Pg. ID 709.)  State Farm insists that the "Concealment or Fraud" provision applies here because Ms. Rizka made material misrepresentations in connection with her claim for personal property damage. In State Farm's words, "the vast difference between [Ms. Rizka's] claims regarding the value of her personal property to the Bankruptcy Court versus what she

24

claimed to State Farm" show that she "fraudulently exaggerated her personal property claim to State Farm." (State Farm Br., ECF #45 at 24, Pg. ID 672.)

A "Concealment or Fraud" provision like the one in the Policy bars an insured's claim for coverage where (1) an insured makes a material representation, (2) the representation was false, (3) the insured knew that it was false at the time she made the representation or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. *See Sinkfield v. State Farm Ins.*, 580 Fed. App'x 323, 326 (6th Cir. 2014) (applying Michigan law). State Farm has established all of these elements in this action.[10] It has shown that Ms. Rizka made a materially false statement in order to collect a substantial payment for damage to personal property that she now says she did not own.

First, Ms. Rizka plainly made a false statement when she swore to State Farm in a Proof of Loss that (1) she was the "OWNER" of the nearly $250,000 in personal property for which she sought coverage and (2) nobody else owned any interest in that property. (*See* Proof of Loss, ECF #45-2 at 92, Pg. ID 770.) Indeed,

---

[10] In its July 8, 2014, Opinion and Order, the Court denied State Farm summary judgment with respect to Ms. Rizka's claim for personal property coverage. But the Court noted at that time that the record was incomplete, and crucially, that the record did not include "the Proof of Loss or Claim of Loss document that was used to initiate the claims process." (ECF #23 at 18, Pg. ID 431.) And it is in the Proof of Loss where Ms. Rizka swears under oath that she, and she alone, owned the personal property that is the subject of her insurance claim.

Ms. Rizka insists that she actually owned only a tiny fraction of that property and that her son, Kamal, owned the vast majority of the property. (*See* Ms. Rizka Aff. at ¶¶ 1-5, ECF #45-3 at 2, Pg. ID 854; Ms. Rizka July 23, 2015, Dep. Tr. at 194-204, ECF #45-2 at 165-168, Pg. ID 843-846.)

Second, Ms. Rizka's claim that she owned the personal property was material.  "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Mina v. Gen. Star Indem. Co.,* 555 N.W.2d 1, 5 (Mich. App. 1996), reversed in part on other grounds, *Mina v. Gen. Star Indem. Co.*, 568 N.W.2d 80 (Mich. 1997).  It was certainly relevant to State Farm's investigation of Ms. Rizka's personal property claim to know who owned the property that was the subject of the claim.  Among other things, State Farm needed to know who actually owned the property so that State Farm could direct inquiries concerning the property to that person and could direct payment to the injured party.

Third, Ms. Rizka knew that her claim of ownership was false.  As noted above, Ms. Rizka vehemently insists that she never owned nearly all of the personal property that is the subject of her insurance claim, and she has not suggested that she ever believed that she owned the property.  (*See* Ms. Rizka Aff. at ¶¶ 1-5, ECF #45-3 at 2, Pg. ID 854.)

Fourth, State Farm has established that Ms. Rizka acted with the intent to defraud.  The Court recognizes that "[a]s a general matter," whether an insured

acted with an intent to defraud is a question of fact for the jury.  *Sinkfield*, 580 Fed. App'x at 326.  However, a court may find an intent to defraud as a matter of law where (1) there are "extreme" "dollar disparities" between the value of personal property claimed on an insured's proof of loss and the value of his property identified on a recently-filed bankruptcy schedule and (2) the insured offers no reasonable explanation for the disparity.  *See id.*  Both circumstances are present here.

There is a huge disparity between the value of the personal property Ms. Rizka claimed to own in her bankruptcy schedules in 2011 (just $1,500 in "household goods and furnishings" and $200 in "clothing") and the value of the personal property she claimed to own in the Proof of Loss she submitted to State Farm (more than $200,000) less than one year later.  In *Sinkfield*, the Sixth Circuit found an intent to defraud as a matter of law in the face of a similar disparity – where the plaintiff claimed to own personal property valued at $4,000 in her bankruptcy schedules and then claimed damage to $170,000 worth of personal property in an insurance claimed filed just fourteen months later.  *See id.* at 327.

And Ms. Rizka has failed to offer a reasonable explanation for this disparity. In fact, Ms. Rizka has never even attempted to explain how she could properly swear to State Farm that she was the sole "OWNER" of roughly $200,000 in personal property shortly after telling the bankruptcy court she owned virtually

nothing.   Instead, Ms. Rizka makes three points: (1) she did not list in her bankruptcy schedules much of the personal property that is the subject of her Proof of Loss because that property was owned by her son Kamal (*see* Ms. Rizka Br., ECF #47 at 21-22, Pg. ID 1029-1030; *see also* Ms. Rizka Aff. at ¶¶ 1-5, ECF #45-3 at 2, Pg. ID 854); (2) the property owned by Kamal (and omitted from the bankruptcy schedules) is properly the subject of the claim to State Farm because Kamal is an insured under the Policy (*see* Ms. Rizka Supp. Br., ECF #56 at 2, Pg. ID 1460); and (3) Kamal did not file the Proof of Loss himself because he was too busy. (*See* Ms. Rizka Br., ECF #47 at 22-23, Pg. ID 1030-1031; *see also* Kamal Rizka Aff., at ¶7, ECF #47-6 at 5, Pg. ID 1203.)

But these three points – individually and collectively – are a non-sequitur. None of them explain or justify in any way Ms. Rizka's decision to falsely swear in the Proof of Loss that she was the sole owner of the personal property.  If true, Ms. Rizka's three points may establish that she could have submitted a Proof of Loss properly identifying Kamal as the owner who was entitled to coverage for damage to the personal property, but her points say nothing about why it was proper for her to falsely tell State Farm the she, alone, was entitled to roughly $200,000 in coverage.

There is yet an additional reason to conclude that Ms. Rizka completed the Proof of Loss in bad faith: she chose not to identify Kamal as the owner of the

personal property in the Proof of Loss even though (1) she understood the requirement that she identify in a Proof of Loss any other individuals who had an interest in damaged property and (2) she knew precisely how to list in a Proof of Loss a person holding such an interest. Indeed, when Ms. Rizka completed the Proof of Loss for the damage to the Woodcrest Home, she carefully listed the mortgage company and her sister and brother-in-law as additional persons/entities who held and interest in the home. (*See* Proof of Loss, ECF #45-2 at 93, Pg. ID 771.) That Ms. Rizka omitted Kamal from the Proof of Loss for the personal property damage under these circumstances is strong evidence that she did so in bad faith and further precludes her right to recovery here. *Cf. Lewis*, 141 Fed. App'x at 428 (finding bad faith where, among other things, plaintiff listed wages from one employer on bankruptcy schedule and omitted from same schedule prior employment with, and wages earned from, another employer); *White*, 617 F.3d at 483-84 (rejecting claim that plaintiff relied in good faith on advice of counsel where plaintiff listed one proceeding on part of bankruptcy schedule that required listing of all "[s]uits and administrative proceedings" yet omitted harassment claim that plaintiff had filed and pursued with the Equal Employment Opportunity Commission that eventually led to federal lawsuit).

29

In sum, the Concealment or Fraud provision of the Policy applies here and bars all of Ms. Rizka's claims for coverage, including for damage to the Woodcrest Home and to personal property.

## **CONCLUSION**

For the reasons stated above, (1) the doctrine of judicial estoppel bars Ms. Rizka's claim that she is entitled to coverage for damage to the Woodcrest Home, and (2) Ms. Rizka's violation of the "Concealment or Fraud" provision of the Policy voids the Policy in its entirety.  Ms. Rizka's violation of the "Concealment or Fraud" provision of the Policy thus bars her claim based on damage to the personal property and serves as an additional bar (beyond judicial estoppel) to her claim based on damage to the Woodcrest Home.  Accordingly, **IT IS HEREBY ORDERED** that State Farm's Motion for Summary Judgment (ECF #45) is **GRANTED**.

                                       s/Matthew F. Leitman
                                       MATTHEW F. LEITMAN
                                       UNITED STATES DISTRICT JUDGE

Dated:  December 23, 2015

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 23, 2015, by electronic means and/or ordinary mail.

                                         s/Holly A. Monda
                                       Case Manager
                                        (313) 234-5113